*7/21/2010 - No objection has been lodged on 6/17/2010), and no request for an extension of time having been made, the Court has proceeded to review the report. I concur with the Recommendation, adopt the report as my opinion, grant the motion of the HPD defendants to dismiss the claim for reimbursement stated in the Report, and direct the Clerk to close the case.* [handwritten annotation]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------x
LORITA BOWMAN,
                                    :
              Plaintiff,                   REPORT & RECOMMENDATION
                                    :
         -against-                         07 Civ. 239 (CM)(MHD)
                                    :
WATERSIDE PLAZA, L.L.C.,
et al.,                             :
                                       ┌─────────────────────────┐
              Defendants.    :         │ USDS SDNY                │
-------------------------------x       │ DOCUMENT                 │
LORITA BOWMAN,                         │ ELECTRONICALLY FILED     │
                                    :  │ DOC #: _____ │
              Plaintiff,               │ DATE FILED: __7|21|10__  │
                                    :  └─────────────────────────┘
         -against-                         07 Civ. 1818 (CM)(MHD)
                                    :
WATERSIDE PLAZA, L.L.C.,
et al.,                             :

              Defendants.    :
-------------------------------x
```

*Colleen McMahon* [handwritten signature]
*USDJ* [handwritten]

TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:

**MEMO ENDORSED**

Pro se plaintiff Lorita Bowman is a resident of a one-bedroom apartment in the Waterside Plaza housing complex on the east side of Manhattan. She commenced these twin, and now consolidated, lawsuits against Waterside Plaza LLC and two of its representatives, as well as against the New York City Housing Preservation and Development Corporation ("HPD") and one of its employees, to complain that she has not been transferred to a larger, two-bedroom apartment to accommodate a physical disability

1

from which she claims to suffer.[1] She has since stipulated to the dismissal of the Waterside defendants (see Stipulation of Dismissal with Prejudice dated March 3 & 5, 2008), and the HPD defendants have moved to dismiss the complaints against them for failure to state a claim.

For the reasons that follow, we recommend that the motion be granted.

## Plaintiff's Allegations

In her two complaints, plaintiff alleges that she lives with her college-student son in a one-bedroom apartment at Waterside Plaza. (Compl. (07 Civ. 239) at 2, 3; see also Compl. (07 Civ. 1818) at 1). She reports that the Waterside defendants and the HPD defendants "continue to deny me a[n] 'Internal-Transfer' to a TWO-BEDROOM apartment". (Compl. (07 Civ. 1818) at 1-2). She contends

---

[1] It appears that plaintiff intended one of her complaints to assert a claim for disability discrimination and the other to state a claim for discrimination on the basis of race or marital status. (See Compl. (07 Civ. 1818) at 1-2 (alleging that employees of Waterside Plaza, LLC and HPD "[c]ontinue to deny me a[n] 'Internal-Transfer' to a TWO-BEDROOM apartment based upon my disability."); Compl. (07 Civ. 239) at 3 (alleging that Waterside Plaza, LLC and HPD "continue[] to deny 'Internal-Transfers' to Single Parent Head-of-Households Black Americans.") (emphasis in original)).

2

that she should receive that transfer because her apartment is too small for occupancy by her and her son (Compl. (07 Civ. 239) at 3), and because she suffers from a disability, in the form of "a horrible 'v[a]ricose' vein on my left leg in the calf area", and because she is handicapped in walking as a result of a "slip and fall". (Compl. (07 Civ. 1818) at 2). She goes on to allege that Waterside and HPD have approved similar transfers for other Waterside residents because of medical conditions, including a single woman with asthma and a couple because the husband snored. (Id.). She further reports that she is a single parent and that her ethnicity is Black American and Native American (Compl. (07 Civ. 239) at 2), and asserts that she is aware of only Caucasian and Hispanic tenants or married couples being given a transfer to larger apartment. (See Compl. (07 Civ. 239) at 3). On the strength of these allegations, plaintiff asserts claims for housing discrimination based on race, marital status, and disability and contends that the court should order defendants to provide her a reasonable accommodation in the form of a larger apartment. (Compl. (07 Civ. 239) at 1, 4; Compl. (07 Civ. 1818) at 1, 2-3).

From documents attached to one of plaintiff's complaints, we learn that she is a recipient of so-called Section 8 housing subsidies (Compl. (07 Civ. 239) Exs. A, C), which are provided by

3

the United States Department of Housing and Urban Development
("HUD") and funneled through a local housing agency. See 42 U.S.C.
§ 1437f; 24 C.F.R. § 982.1. It also appears that, pursuant to 42
U.S.C. § 3610, Ms. Bowman filed written administrative complaints
with HUD in or about 2004, asserting that Waterside Plaza and HPD
had engaged in discriminatory housing practices by not providing
her a larger apartment. (See HUD Letter of Determination, stamped
Nov. 19, 2004, annexed to Compl. (07 Civ. 239) and available at Ex.
B to Rosencrantz Decl. dated Sep. 11, 2007 ["HUD Letter of
Determination"], at p.1; HUD Preliminary Finding of Compliance,
stamped Nov. 19, 2004, annexed to Compl. (07 Civ. 239) and
available at Ex. B to Rosencrantz Decl. dated Sep. 11, 2007 ["HUD
Preliminary Finding of Compliance"], at p.1). Apparently plaintiff
complained that these two entities had engaged in discrimination on
the basis of race, color, national origin, and disability. (See HUD
Letter of Determination at p.1 (race/color, national origin); HUD
Preliminary Finding of Compliance at p.1 (disability)).

HUD, in cooperation with the New York State Division of Human
Rights,[2] investigated these complaints under Title VI of the Civil

---

[2] (HUD Cover Letter from Stanley Seidenfeld, stamped Nov. 19,
2004, annexed to Compl. (07 Civ. 239) and available at Ex. B to
Rosencrantz Decl. dated Sep. 11, 2007 ["HUD Cover Letter"], at
p.1).

Rights Act of 1964 (HUD Letter of Determination at p.1) and Section 504 of the Rehabilitation Act of 1973. (HUD Preliminary Finding of Compliance at p.1; HUD Final Determination of Compliance, stamped Feb. 28, 2005, annexed to Compl. (07 Civ. 239) and available at Ex. C to Rosencrantz Decl. dated Sep. 11, 2007 ["HUD Final Determination of Compliance"], at p.1). Based on that inquiry, HUD made a series of determinative findings. It noted that HPD was a recipient of federal funds and that, in that capacity, it administers the federal Section 8 housing subsidy program for New York City. (HUD Letter of Determination at p.1; HUD Preliminary Finding of Compliance at p.1). HUD further observed that HPD nonetheless had no authority to require Waterside Plaza to provide a two-bedroom apartment to Ms. Bowman. (HUD Letter of Determination at p.1; HUD Preliminary Finding of Compliance at pp.1-2). As for Waterside Plaza itself, HUD concluded that until 2001 it had been regulated by HPD under the so-called Mitchell-Lama housing finance law, which provided subsidized mortgage rates and tax abatements to certain middle-income housing landlords, in exchange for which the landlords were required to offer housing rentals at below-market rates. (HUD Letter of Determination at pp.1-2; HUD Preliminary Finding of Compliance at p.2). HUD further observed, however, that after 2001 Waterside Plaza had satisfied the underlying mortgage on its building and withdrawn from the Mitchell-Lama program and was

therefore no longer regulated by HUD. (HUD Letter of Determination at p.2; HUD Preliminary Finding of Compliance at p.2). Accordingly, HUD found that HPD had no responsibility for any decision of Waterside Plaza and that Waterside Plaza itself was not subject to HUD investigation and regulation. (HUD Letter of Determination at p.2; HUD Preliminary Finding of Compliance at p.2).

### Defendants' Motion

The HPD defendants have moved to dismiss the complaint as against them based on the assertion that HPD has no authority to grant or deny a transfer of apartments. (Defs.' Mem. Law at 14). It necessarily follows, they say, that they cannot be shown to have violated Ms. Bowman's rights under any federal law. (See id.). As part of their submission, defendants proffer a form signed by Ms. Bowman on September 6, 2006, in which she requests of Waterside that it transfer her to a two-bedroom apartment on a lower floor as a reasonable accommodation for her disability (Ex. D to Rosencrantz Decl.), as well as an October 3, 2006 letter to her from HPD, noting that HPD had previously provided her with a voucher for a two-bedroom apartment and advising her that HPD could not force Waterside Plaza to transfer her to such an apartment. (Ex. E to Rosencrantz Decl.).

6

In opposition to the motion, plaintiff offers a series of complaints about the dissolution of the Mitchell-Lama program at Waterside (Pl.'s Aff. Opp. at 2-3) and rudeness on the part of several HPD personnel (id. at 3-4), and details instances in which she says that other tenants less in need than she were given larger apartments. (Id. at 6). However, she acknowledges that HPD did eventually provide her with a voucher for a two-bedroom apartment. (Id. at 3).

ANALYSIS

Before addressing defendants' motion, we briefly summarize the standards by which a motion for dismissal under Rule 12(b)(6) is assessed.

A. Rule 12(b)(6) Criteria

On a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); accord, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d

Cir. 2006) (internal citation omitted). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. E.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). The pleader may not rely, however, on allegations that are only bare legal conclusions, see Starr v. Sony BMG Music Entm't, 592 F.3d 314, 317 n.1 (2d Cir. 2010) (discussing Rule 8(a)) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)), or "legal conclusions couched as factual allegations". Starr, 592 F.3d at 321 (quoting Port Dock & Stone Corp. v. Old Castle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has recently rejected this formulation, however, and hence a complaint is now subject to dismissal unless its well-pled factual allegations, if credited, make the claim "plausible". See Iqbal, 129 S. Ct. at 1949; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560-61 (2007). While the

Supreme Court's recent decisions do not require a party to plead "detailed factual allegations" to survive a motion to dismiss, they do require that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". <u>Starr</u>, 592 F.3d at 321 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). In any event, "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. <u>Iqbal</u>, 129 S. Ct. at 1949. In short, the pleading must do more than "tender[] naked assertions devoid of further factual enhancement", <u>id.</u> (internal quotation marks omitted), and in doing so must "'raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).

When addressing a 12(b)(6) motion, the court may not consider evidence proffered by the moving party or its opponent. <u>E.g.</u>, <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007); <u>Healthcare Fin. Group, Inc. v. Bank Leumi USA</u>, 669 F. Supp. 2d 344, 347 (S.D.N.Y. 2009) (internal citation omitted). Rather, the court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court

may take judicial notice. <u>See</u>, <u>e.g.</u>, <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 98; <u>Roth</u>, 489 F.3d at 509; <u>Leonard F. v. Israel Disc. Bank</u>, 199 F.3d 99, 107 (2d Cir. 1999).

In view of plaintiff's status as an untutored <u>pro</u> <u>se</u> litigant, we read her complaint and motion papers liberally and derive from them the most reasonable claims and arguments that they be read to imply. <u>See</u>, <u>e.g.</u>, <u>Triestman</u>, 470 F.3d at 474-76. However, the "plausibility" standard articulated in <u>Twombly</u> and <u>Iqbal</u> applies to the pleadings of <u>pro</u> <u>se</u> plaintiffs as well as to those of represented litigants. <u>See</u>, <u>e.g.</u>, <u>Sheehy v. Brown</u>, 335 F. App'x 102, 104 (2d Cir. June 23, 2009); <u>Carvel v. Cuomo</u>, 2009 WL 4893669, *1 (2d Cir. Dec. 21, 2009); <u>Dorsey v. Fisher</u>, 2009 WL 4985421, *2, 4 (N.D.N.Y. Dec. 15, 2009); <u>Conseillant v. Lafontant</u>, 2009 WL 2163263, *1 (N.D.N.Y. July 20, 2009).

B. <u>Assessment of the Motion</u>

Although plaintiff's complaints do not label her asserted claims against the HPD, we infer that she is seeking to invoke several legal theories. One is a claim under the Fair Housing Act, a statute that she does mention in her motion papers, which provides in pertinent part as follows:

10

[I]t shall be unlawful --

     (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, sex, familial status, or national origin

     (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604. These anti-discrimination provisions also now cover discrimination on the basis of physical handicap. 42 U.S.C. § 3604(f). Such discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).


     Another possible claim is under section 504 of the Rehabilitation Act, which is cited by HUD in addressing plaintiff's agency complaint. It states:

No otherwise qualified individual with a disability in the United States [. . .] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency [. . . .]

11

29 U.S.C. § 794(a). Finally, plaintiff may be seeking to assert a claim under the Americans With Disabilities Act, which provides, in terms similar to those of the Rehabilitation Act:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.


Under any of these theories, plaintiff is seeking to hold HPD and its personnel liable for the alleged failure of Waterside Plaza to honor her request for a transfer to a larger apartment, and she views the failure to approve her application as having been based on her disability, race, national origin, or familial status or as reflecting a failure to provide a reasonable accommodation for her disability. Given this underlying theory, the question posed by defendants' motion is whether HPD bears any legal responsibility for the alleged denial of a larger apartment. We conclude that, as a matter of law, the complaint offers no basis for imputing such responsibility to HPD.[3]

--------------------

[3] In assessing this issue we refer to a number of documents that are not part of the body of plaintiff's two complaints. All, however, are referred to by one or both of the complaints,

12

The Section 8 housing assistance program was created by the
United States Housing Act, and involves the provision of federal
funds funneled through local public housing agencies to eligible
landlords and tenants to facilitate the rental of units to low-
income families. See 42 U.S.C. §§ 1437f; Salute v. Stratford Greens
Garden Apts., 136 F.3d 293, 296 (2d Cir. 1998). HPD is such a local
public housing agency. (Defs.' Mem. Law at 5; NYC Charter
§ 1802(3)).

The statute addresses both project-based and tenant-based
assistance. Waterside Plaza participated in a project-based
assistance program up to the time that it paid off its underlying
mortgage and withdrew from the Mitchell-Lama program (see HUD
Letter of Determination at pp.1-2), and thereafter Ms. Bowman was
a beneficiary of a tenant-based assistance program involving the
issuance of vouchers to assist in obtaining and paying for an
apartment. (See Ex. C to Compl. (07 Civ. 239) (plaintiff's Section
8 lease, executed Nov. 7, 2001)). Since the events at issue
occurred after Waterside Plaza had withdrawn from the Mitchell-Lama
program, the governing statutory provisions are those that address
HUD's voucher assistance to tenants. (See Ex. A to Rosencrantz

annexed to the complaints, or referred to by the annexed
documents and are integral to plaintiff's claims.

13

Decl. (HUD Voucher, Housing Choice Voucher Program)).

In addressing the project-based aspects of the Section 8 program, the statute specifies that the contract that the local agency enters into with the landlord must provide inter alia that "the selection of tenants shall be the function of the owner", although in certain circumstances the agency "may establish local preferences." 42 U.S.C. § 1437f(d)(1)(A). In providing for voucher-based assistance to eligible tenants, 42 U.S.C. § 1437f(o), the statute also specifies that "the screening and selection of families for those units shall be the function of the owner." 42 U.S.C. § 1437f(o)(6)(B).

The statute contemplates, as part of the voucher program for tenants, that the local agency will enter into housing assistance payment contracts with the landlord for specific units, and requires the agency to inspect the unit before entering into the contract to ensure that it meets statutory standards. 42 U.S.C. § 1437f(o)(8)(A) & (C). It also provides that, on request, the agency will assist the eligible tenant to negotiate a reasonable rental. 42 U.S.C. § 1437f(o)(10)(B). The statute does not, however, give the agency any authority to direct a landlord to provide a unit to an eligible tenant under the tenant voucher assistance

14

program. Cf. 42 U.S.C. § 1437f(o)(13)(J) (for project-based
assistance, agency may establish preferences or selection criteria
for assisted project, and "[a]ny family [. . .] rejected for
admission to a structure by the owner or manager of a structure
assisted under this paragraph shall retain its place on the waiting
list"). Indeed, the landlord is free to reject eligible tenants
because they are relying on a Section 8 voucher or to take some and
reject others. See, e.g., Salute, 136 F.3d at 297-99 (addressing
effect of repeal of 42 U.S.C. § 1437f(t)(1)(A), the "take one take
all" provision).

        The governing regulations promulgated by HUD specify that it
is the eligible families who are responsible for selecting and
renting units that meet program standards. 24 C.F.R. § 982.1(a)(2).
If the local agency approves the unit and tenancy, it then
contracts with the owner to provide rent subsidy payments for the
tenant. Id.

        The local agency sets subsidy standards for the vouchers, but
HUD requires that those standards take into account family size in
determining the size of an authorized unit, as defined by the
number of bedrooms in the apartment. 24 C.F.R. § 982.402(a) & (b).
The statute also provides for the issuance in certain circumstances

15

of enhanced vouchers. 42 U.S.C. § 1437f(t). These vouchers may be issued for Section 8 tenants if the landlord ends its participation in a project-based Section 8 assistance program. 42 U.S.C. § 1437f(t)(2).

In supervising the tenant-based subsidy program, HUD requires that the program comply with all federal equal-opportunity mandates, including the Fair Housing Act. 24 C.F.R. § 982.53. The governing regulations permit an aggrieved person to complain if illegal discrimination based on disability or race "prevents the family from finding or leasing a suitable unit with assistance under the program." 24 C.F.R. § 982.304. Such claims may be asserted under the pertinent provisions of the Fair Housing Act -- 42 U.S.C. § 3604(b) (discrimination on basis of race and familial status), and 42 U.S.C. § 3604(f)(2)(A) (disability discrimination) -- which includes a requirement that the supplier of housing make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to ensure such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). See, e.g., Salute, 136 F.3d at 299-302.

Consistent with the requirement of HUD that local agencies prepare an administrative plan to govern their Section 8

operations, HPD has such a plan in place, and it addresses guidelines for issuance of vouchers for given apartment sizes. The basic standard is that one bedroom is presumptively allocated for each two family members, but exceptions may be granted if needed based on age, gender, health, disability or other circumstances. See HPD Hous. Choice Voucher Program, Admin. Plan, Effective Mar. 1, 2006, found at http://home2.nyc.gov/html/hpd/downloads /pdf/2006AdminPlan.pdf ["HPD Admin. Plan"], at pp.7-3, 7-4. The plan also specifies that HPD will make "reasonable accommodations to persons with disabilities to ensure that they may fully access and use the voucher program and related services." Id. at p.2-1. In addition, the HPD plan has a non-discrimination provision under which it offers assistance to an aggrieved party in filing a complaint if that person "alleges discrimination in their housing search". Id.


As authorized by the Housing Act, 42 U.S.C. § 1437f(t), HPD provides enhanced vouchers when, inter alia, the property owner of a multi-family structure prepays an existing federally assisted mortgage or opts out of another government-assistance program, as occurred in this case. See HPD Admin. Plan, at p.19-1. These vouchers are designated specifically for the residents of a structure in such a situation. Id. They allow for eligibility at

17

higher income levels than the regular vouchers (compare id. with id. at p.5-6), and may cover somewhat higher rents than the regular vouchers. See id. at p.19-2 (enhanced voucher payment standard equals approved gross rent of the unit rather than normal HPD payment standard). The HPD Plan further specifies that recipients of such enhanced vouchers may move when they receive the voucher, either "to another unit in the project, outside the project, or outside HPD's jurisdiction." Id. at p.19-1. If the tenant moves outside the project, however, the enhanced voucher reverts to a regular voucher. Id.

Based on a review of both plaintiff's complaints and her submissions in opposition to the current motion, it appears that the factual predicate for Ms. Bowman's claims against HPD is that she has been unable to obtain a two-bedroom unit at Waterside Plaza despite being on a waiting list for some time. She acknowledges that HPD provided her an enhanced voucher that would qualify her for such an apartment, but she apparently blames HPD for her inability to procure one at the Waterside complex. She also asserts in her motion papers that at some point in time HPD gave her a voucher that was usable only for a one-bedroom apartment, but she admits that she complained about that apparent error, and HPD subsequently provided her with the correct voucher. (Pl.'s Aff. Opp. at 3; Ex. D to Pl.'s

18

Aff. Opp.).

The flaw in plaintiff's claims, whether based on the Fair
Housing Act or on other statutory anti-discrimination provisions,
is that she does not, and cannot, point to any legal authority for
the notion that HPD, as a designated local agency under the Section
8 program, has the legal authority to require the landlord to
provide her with an apartment of a given size, or indeed to provide
her with any apartment at all.[4] Absent such authority on the part of
HPD, even if we assume for present purposes that the landlord has
engaged in discrimination against plaintiff on the basis of
disability or race or other prohibited classification, she cannot
assert a claim against HPD for that discrimination.

Finally, even if we were to construe plaintiff's <u>pro</u> <u>se</u>
pleadings and motion papers with the utmost liberality and read them
as alleging that HPD has, in some unstated way, conspired with the

---

[4] In fact, that very point was made by HUD, the federal
agency charged with administering the Section 8 program, when it
rejected her Fair Housing Act and Rehabilitation Act agency
complaints. (<u>See</u> HUD Letter of Determination at p.1; HUD
Preliminary Finding of Compliance at p.1-2). Nothing in the text
of either statute even arguably authorizes a local public housing
agency to compel a landlord to provide an apartment to someone
simply because that person has a Section 8 voucher to subsidize
the rent.

19

landlord to promote a policy or practice of discrimination, that reading would not save her complaint. Bare or conclusory allegations of conspiracy do not suffice to state a claim when the complaint is devoid of factual specifics of some sort to undergird that conclusion. See, e.g., Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) ("Broad allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" (quoting Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003))). Moreover, as we have noted, the governing standards for assessing a pleading that is challenged under Rule 12(b)(6) require that the complaint offer allegations that plausibly state a claim. E.g., Arar, 559 F.3d at 569 (quoting Twombly, 550 U.S. at 570). Necessarily, an unadorned allegation that HPD, for reasons unexplained, decided to promote discriminatory practices by the landlord, is self-evidently not a plausible allegation and hence in any event cannot provide a basis for this type of claim.

Ultimately, if plaintiff had any potentially viable discrimination claim based on the facts that she recounts, it would have been against the landlord. Since, however, she has stipulated to the dismissal of her claims against Waterside Plaza, the balance

20

of the complaint in these two cases should be dismissed. Moreover, since there is no suggestion in the record before us that plaintiff could conceivably re-write her complaint to state a plausible claim against HPD, dismissal with prejudice is appropriate. See Porat v. Lincoln Towers Community Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam) (holding that district court did not abuse its discretion in dismissing represented party's complaint with prejudice under Rule 12(b)(6) where party gave no indication that deficiencies in the complaint could be cured by repleading).

## CONCLUSION

For the reasons stated, we recommend that the HPD defendants' motion to dismiss the complaints be granted.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Colleen McMahon, Room 1350, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New

York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).


Dated: New York, New York
       June 4, 2010


MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Report and Recommendation have been mailed today to:

Ms. Lorita Bowman
40 Waterside Plaza
Apt. 27F
New York, New York 10010

Dawn Zuroff Rosencrantz, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
Room 5-193
New York, New York 10007

22